MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. J. T. EDLING.

Delivered January 15, 1898.

**1. Railway Company—Negligence—Ordinary Prudence.**
Where a collision of trains resulted from the fact of the air brakes ceasing to work, and the trains' operatives, upon discovering that fact, used such care as persons of ordinary prudence would have exercised, the company is not liable to one injured in the collision.

**2. Charge of Court—Evidence Necessary.**
It is not error to refuse a requested charge which is not authorized by the evidence.

**3. Allegata and Probata—Proof of Result of Wound.**
Where plaintiff's petition alleged that he received a serious wound in the left side of his breast and body, and there was proof of such a wound which permitted a protrusion of some of the internal viscera, further evidence is admissible of an injury to the left kidney as the effect of the injury.

APPEAL from Ellis. Tried below before HON. J. E. DILLARD.

*T. S. Miller* and *G. C. Groce,* for appellants.

*S. P. Skinner, T. L. Hawkins,* and *A. L. Love,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—The statement of the case contained in appellant's brief is substantially correct, and is adopted. This suit was instituted by appellee in the District Court of Ellis County, Texas, on May 8, 1895, to recover damages for alleged injuries charged to have been suffered in a collision of a train on appellant's road with one on the road of the Fort Worth & New Orleans Railway Company, at an intersection of the two roads, near Waxahachie, Texas, on December

25, 1894. Appellee, a passenger on the Fort Worth & New Orleans Railway Company's train, alleged the collision; that it was the result of negligence on the part of appellant's employes in failing to stop before reaching said intersection, and injuries to himself, consisting of a severe blow on the head, inflicting a gash and producing great pain and loss of blood, a painful wound on the left side and body, which cut the skin slightly, fractured two ribs, and caused internal injuries to the lungs, chest and heart of a serious and permanent character, resulting in inability to perform labor, and great mental and physical pain, etc., the injuries being alleged to be permanent.

Appellant answered by a general denial, and by a special plea, that if its train failed to stop before reaching this intersection, as alleged, it was not from negligence on its part, or of its employes; that its train was in charge of careful and prudent operatives, and was equipped with the latest and most approved appliances for stopping trains, which worked perfectly up to the time of the collision, and that if it then failed to stop, it was because its said appliances were wrongfully tampered with and disarranged by trespassers and wrongdoers, without the knowledge or consent of appellant or its agents and employes, and under circumstances rendering the discovery of such tampering impossible in time to have avoided the collision; and that if this was not true, then the failure to stop was the result of defects in its said appliances not discoverable by the most careful examination, and which inventive genius had as yet been unable to overcome in the best, safest, and most approved appliances for stopping trains, and that its employes, did, in fact, use all the care, prudence, and caution possible under the circumstances to avoid and prevent such collision, wherefore it was claimed that the same, in so far as appellant was concerned, was an unavoidable accident.

A trial of the cause resulted in a verdict and judgment in favor of appellee for $3500, and appellant's motion for new trial being overruled, this appeal is prosecuted.

Our conclusions of fact are: That on December 25, 1894, J. T. Edling was a passenger on the train of the Fort Worth & New Orleans Railway Company, going from Houston, Texas, to Omaha, in the State of Nebraska; that the tracks of the Missouri, Kansas & Texas Railway Company and the Fort Worth & New Orleans Railway Company crossed each other about one mile west of Waxahachie, in Ellis County; that while appellee J. T. Edling was a passenger on a train of said Fort Worth & New Orleans Railway Company, going west at or near said crossing, the servants and operatives of the appellant's train negligently ran a passenger engine and train of cars attached thereto into the train of the said Fort Worth & New Orleans Railway Company, upon which J. T. Edling was a passenger, without any fault on the part of said Edling, thereby causing a wreck and greatly injuring said Edling. Appellee's injuries are permanent, and he has sustained damages thereby in the amount found by the jury.

Appellant does not present its first and second assignments of error, but presents its third assignment, which reads as follows:

"The court erred in failing to submit the special defense pleaded, that the collision complained of, if not the result of a wrongful tampering with defendant's appliances for stopping its trains, which were alleged to be the latest and most approved in use for the purpose, was the result of some defect in said appliances not discoverable by the most careful examination, and which inventive genius has been unable to overcome in the most approved appliances for stopping trains; and that, in fact, defendant's employes used all the care, caution, and prudence possible under the circumstances in which they were placed to avoid the collision, which was claimed to have been an unavoidable accident; and the court further erred in refusing the third special instruction requested on behalf of the defendant, intended to present this defense to the jury."

The contention of appellant is that its defense embraced two theories: one that the brakes had been tampered with by parties not connected with the railroad company; and the other that the train was equipped with the most approved appliances for controlling it, and that the brakes had always worked perfectly up to the time of the accident, and that their failure to work at the time of the accident was due to latent defects which could not have been ascertained by the use of ordinary care. The appellant admits that the charge fairly submitted to the jury the law governing its first contention, and further that the charge laid down the true rule as to the degree of care due from appellant to appellee at the time of the collision.

The evidence was, that the train could be controlled and stopped by the engineer from the engine if the brakes were in proper order, or the train could be stopped by the engineer giving the signal to apply the brakes, and that had the signal been given to apply the brakes, the train could have been stopped in a few seconds. The engineer did attempt to work the brakes from the engine, but they would not work. The evidence shows that the reason the brakes would not work was that the "angle cock" just in front of the blind baggage car was turned, which cut off the air beyond that point in the "train line," and prevented the engineer from manipulating the air from the engine. The engineer says: "If I had whistled for brakes, it would have been the duty of each and every employe to pull the conductor's cord, and if the conductor's cord had been pulled in any coach it would have set the brakes on the entire train back of where it was cut off, and would have stopped the train within 300 or 350 feet." The engineer did not call for brakes.

The court instructed the jury that if the defendant's engineers and other employes engaged in operating its said engine and train when approaching said crossing, after they had discovered that said air brakes had been tampered with (if they had), or failed to work (if they did so fail to work), failed to use such care, caution, and effort to stop said locomotive and train as persons of ordinary care, caution, and prudence would have exercised under similar circumstances to have stopped said

train, then the failure of defendant's agents, servants, and employes to stop said locomotive and train would be negligence. The court further charged the jury: "The jury are further instructed that if they believe from all the evidence before them that the engineer and other operatives in charge of and managing defendant's said locomotive and train, when approaching the crossing of the Houston & Texas Central Railway, used such care, caution, and effort as persons of ordinary care, caution, and prudence would have used under similar circumstances to stop such locomotive before it reached such crossing to prevent a collision with the train on said Houston & Texas Central Railway, then, notwithstanding that plaintiff may have suffered injury as a result of such collision, you should find a verdict in favor of the defendant."

We think the above charge is free from criticism, and fairly submitted the issues supported by the evidence.

The defendant requested a special charge, which the court refused, to the effect that if the cause of the injury was unusual, and one which reasonable and careful human foresight could not have foreseen, and with such care and foresight could not have guarded against, and if the injury was the result of an accident, and the cause could not by ordinary prudence have been foreseen by those in charge of defendant's train, then defendant would not be liable.

We do not think the court erred in refusing this charge. The evidence did not authorize the giving of it. The evidence is uncontradicted, that had the signal been given to apply the brakes, the brakes could have been applied in a few seconds—the conductor says thirteen seconds—and the train stopped within 350 feet. The charge of the court fairly instructed the jury that if, in approaching the crossing, the engineer and other operatives of defendant's train used ordinary care to stop the locomotive and prevent the collision, the defendant would not be liable. We do not think the third assignment of error well taken, and the same is therefore overruled. Railway v. Ranson, 41 S. W. Rep., 826; Railway v. Mackney, 83 Texas, 416.

The appellant's fourth assignment of error reads: "The court erred in refusing the fourth special instruction requested on behalf of defendant, to the effect that as plaintiff, in his petition, claimed internal injuries only to the chest, lungs, and heart, the jury were not authorized to consider the evidence of injury to a kidney, because no such injury was charged, and there was no proof that such an injury, if it existed, in any manner affected the heart, lungs, or chest, and that they were not authorized to consider the evidence of diaphragmatic hernia, except in so far as, if at all, it was shown that such injury, if it existed, affected the heart, lungs, and chest."

The defendant requested, and the court refused, a special charge substantially as set forth in this assignment. The petition alleged, "that plaintiff received a severe blow upon the head which cut a gash about two inches long through to the bone, producing great pain and loss of blood, and that he also received a serious and painful wound on the left

side of his breast and body, which cut the flesh, slightly fracturing two ribs, and caused internal injuries to the lungs, chest, and heart of a serious and permanent character, * * * and that his ability to carry on said business and employment has been by said injuries almost entirely destroyed, and that he is unable now and has been at all times since receiving said injuries to do any physical labor, and that he can not endure excitement on account of the effect said bruises have produced on his heart and nervous system; * * * that plaintiff has suffered in consequence of said injuries great bodily and mental pain and anxiety, and that said suffering and anxiety have been continuous, and that said injuries are permanent."

Dr. Ward testified that the injuries could be diagnosed as bruises, fractured ribs, flesh wounds, and diaphragmatic hernia. Diaphragmatic hernia is where the muscles of the diaphragm have separated, permitting a protrusion of some of the internal viscera. The separation of these muscles may be produced by traumatism, that is from any forcible injury. He found the ninth and tenth ribs on the left side fractured at their juncture with the spinal column.

Dr. Sweatt testified that the plaintiff was suffering from traumatic pleurisy, that is, the bruises received by plaintiff had caused inflammation of the membraneous lining of the pleuratic cavity.

Dr. Impey testified that plaintiff was suffering substantially as stated by Dr. Ward, that is, diaphragmatic hernia, or some other result of traumatic injury. He stated that diaphragmatic hernia was liable to derange digestion and constipate the bowels. He stated that his examinations revealed symptoms of diaphragmatic hernia, and also injury to the left kidney sufficient to produce permanent injury.

This is the only evidence as to any injury to the kidney. There was no exception taken to this evidence on the trial, nor was there any motion made to strike the evidence out. Appellant sought to have the court control it by a special charge. It has been held that where improper evidence is admitted without exception, it will not be controlled by a special charge. Railway v. Mitchell. 75 Texas, 81.

We do not mean to be understood as expressing the opinion that the evidence was improper. If any one of the injuries stated in the petition is sufficiently comprehensive to embrace an injury to the kidney, then the evidence was admissible. Railway v. Mannewitz, 70 Texas, 74. Again, if the injury to the left kidney was an effect resulting from any of the injuries sustained by plaintiff and embraced within the injuries set out in the petition, the evidence was proper. Railway v. Mitchell, 72 Texas, 173. We think that if it fairly appears that the injury to the left kidney resulted from any of the injuries alleged and proved, the evidence was proper. The petition alleged that "he received a serious and painful wound on the left side of his breast and body," etc.

The evidence was that "the ninth and tenth ribs on the left side were fractured near the juncture with the spinal column and the overlaying soft parts contused." The physicians further stated that plaintiff sus-

tained internal injuries of an unknown character. Two of them diagnosed the injuries as diaphragmatic hernia, produced by traumatism, that is any violent or forcible injury. Diaphragmatic hernia is defined by the physicians as the separation of the muscles of the diaphragm, permitting a protrusion of some of the internal viscera. We think that it may fairly be inferred from the evidence that the injury to the left kidney was the effect of the injury to the left side of the body and the fracturing of the ninth and tenth ribs on the left side at their juncture with the spinal column. We think that the evidence discloses that the injury to the kidney was the effect of plaintiff's injuries alleged in his petition. The evidence was admissible, and the court did not err in refusing the special charge.

Counsel for appellant refer us to the case of Railway v. Beasley, 29 Southwestern Reporter, 1121, decided by the Court of Civil Appeals at Galveston, as a case supporting their contention. In that case the petition alleged the injuries as "breaking his leg and thigh and injuring his spine, besides crushing his arms, head, and body." The evidence disclosed an injury to plaintiff's foot. The court, speaking of the petition, says, "There is no reference to any injury of the foot." It seems that the injuries set out in the petition were not sufficiently comprehensive to embrace an injury to the foot, nor was the injury to the foot the result of any of the injuries alleged. That case differs from the one before us.

We find no error in the record, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.