Texas & New Orleans Railway Company v. Chris. Mortensen.

Decided November 29, 1901.

1.—Negligence—Charge of Court—Defining Issues.

Where the charge fails to define for the jury the issues of the case, merely referring to the petition for the acts of negligence alleged as the grounds of recovery, but the issues are so clearly made by the pleadings and evidence that the jury could not have been misled by such omission, there is no reversible error.

2.—Same—Railroads—Reasonable Care—Violation of Rules by Employe.

In an action for damages by a railroad engineer for personal injuries resulting from a collision with another train, the court correctly charged that if plaintiff violated a rule of defendant company and his injuries were the result thereof, he would not be debarred from recovering if the jury believed under all the circumstances a reasonably prudent person would have done as plaintiff did. See evidence held to warrant such instruction.

3.—Same—Several Acts of Negligence.

The court properly refused a requested charge submitting two acts of negligence, the existence of either of which would render the defendant liable, and instructing the jury that failure to establish each and all of the acts of negligence enumerated would defeat a recovery.

4.—Same—Charge on Weight of Evidence.

In an action by an engineer for personal injuries, where the defendant company claimed that plaintiff was negligent in entering the yard without giving any signals or having his engine under control, although it had been customary for such trains to stop at the station there for water, and plaintiff knew or ought to have known of such custom, and the evidence showed that plaintiff's orders gave him a free track and that no signals were displayed by the train in front of him, the court correctly refused to charge that, from the undisputed evidence, it was customary for trains to stop at the station there for the purpose of taking water, and that if plaintiff knew and disregarded such custom, and in so doing failed to exercise ordinary care, he could not recover, as such charge was on the weight of evidence, not in response to the pleadings, and singled out one issue of negligence among several others.

5.—Same—Evidence.

Plaintiff was properly allowed to testify that he had his train under control, and to explain the meaning of "having the train under control."

6.—Same.

Testimony of other engineers running engines over the road, as to where they usually shut off steam, applied the air, and slowed up on approaching the station in question, was correctly excluded as not admissible for the purpose of showing where plaintiff should have commenced to slow up, since this should properly be shown by such facts as the weight of the engine, number of cars, grade, speed of the train, and the like.

Appeal from Harris. Tried below before Hon. Charles E. Ashe.

*Baker, Botts, Baker & Lovett* and *A. L. Jackson*, for appellant.

*Fisher, Sears & Sherwood* and *J. R. Norton*, for appellee.

GARRETT, Chief Justice.—This action was brought in the District Court of Harris County by Chris. Mortesen, as plaintiff, against the Texas & New Orleans Railroad Company, as defendant, to recover dam-

ages for personal injuries received by the plaintiff in the collision of a freight train drawn by a locomotive operated by the plaintiff, as engineer, with the rear end of another freight train on defendant's track at Sour Lake Station. The petition alleged that the collision and injuries were the result of the negligence of the defendant in the failure of its employes in charge of the train in front to comply with certain rules of the defendant adopted for the operation of its trains. These rules were set out in the petition, and it was alleged that the violation of each of them caused or contributed towards the injuries of plaintiff. After general demurrer and general denial, contributory negligence was specially pleaded by the defendant, that (1) plaintiff fell asleep, or through other inattention failed to keep a lookout for signal or other lights; (2) by the exercise of ordinary care he should have known that signals were displayed at Sour Lake station to slow up and stop his train, and that he disregarded such signals; (3) he disregarded rule 328, which was set out, requiring freight trains to approach and pass all stations carefully and under full control, expecting to find the main track inside of the yard limit bounds occupied by trains doing work; and (4) he permitted his locomotive to enter the yard at Sour Lake without giving any signals and without controlling or attempting to control the locomotive, although it has been customary for such trains to stop at the station for water, and plaintiff knew or ought to have known of such custom. There was a trial by jury which resulted in a verdict and judgment in favor of plaintiff for $8500.

The injuries complained of in the petition were received, as alleged, on December 10, 1899, about 3 o'clock a. m., in a collision between two fright trains on the defendant's railroad at Sour Lake station, and the plaintiff sustained damages to the amount for which he recovered judgment. The colliding trains were sections 1 and 2 of No. 246, and both were running east from Houston. Plaintiff was in the employment of the defendant as a locomotive engineer, and was in charge of and operating the engine drawing section 2. Section 1 left Houston about 7 o'clock p. m., December 9th, and section 2 left an hour later. There was no train between them. At Liberty, a station twenty-one miles west of Sour Lake, section 2 came in sight of section 1, but waited there until a helper engine pushed section 1 over a grade called Ames' Hill, about sixteen miles west from Sour Lake, and returned to Liberty to help plaintiff's train over, which put section 1 from forty-five to fifty-five minutes ahead of section 2. At Sour Lake station was a water tank about 125 feet west of the depot building, and a cattle guard a little over 1000 feet west of the water tank. There were sidings extending both east and west from the station. The track is straight west of Sour Lake for several miles. Plaintiff's orders gave him the right of way into Sour Lake station and a free track to the station and for three-fourths of a mile beyond. He testified:

"I kept a proper lookout all the time prior to the collision, and on the engine with me was the fireman of my locomotive, and also the

head brakeman of our train was on the engine. There was a curve about two and a half miles east of Devers, and when I turned the curve at Devers there was still no train in sight ahead of me. When I got to the mile board west of Sour Lake station I put my head out of the window to look for the station, and I told the fireman that I was going to stop at the station to get water. I had a heavy train, and I saw the red station light. The station light is a reversible light, and always shows red until reversed. There were no other lights displayed at the station, or indicating the presence of a train near the station, and if there had been, I could have seen them. Just about that time the fireman was about to put in more coal into the firebox of our engine; he was a green hand, and he was unnecessarily using a great deal of coal. I turned around toward him and sought to attract his attention by motioning my hand in order to check him from putting in more coal. I was thus occupied for some five or six seconds, and then turned and put my hand on the throttle to shut off steam, when my engine struck the caboose or hindmost car of section No. 1."

Section 1 was standing still on the main track with its caboose just west of the cattle guard. Reconciling the conflict in the evidence by giving proper effect to the verdict of the jury, we find that plaintiff had his train under control, and was using due care in approaching the station, and that the collision occurred without fault or negligence on his part, but was the result of the negligence of the defendant's employes in charge of section 1 in failing to give the signals and setting the lights on the rear end of the caboose, as required by the rules of the company. The following are the rules of the company the disobedience of which by its employes was alleged in the petition to have been negligence on the part of the defendant from which plaintiff's injuries resulted. They were put in evidence by the plaintiff:

"97. When a freight train is detained at any of its usual stops more than three minutes, where the rear of the train can be plainly seen from a train moving in the same direction at a distance of at least fifteen telegraph poles, the flagman must go back with danger signals not less than one pole, and as much further as may be necessary to protect his train; but if the rear of his train can not be plainly seen at a distance of at least fifteen telegraph poles, or if it stops at any point that is not its usual stopping place, the flagman must go back far enough to be seen from a train moving in the same direction when it is at least fifteen telegraph poles from the rear of his own train, and if his train should be detained until within ten minutes of the time of a passenger train moving in the same direction, he must be governed by rule 99."

"No. 34. Each train running after sunset, or when obscured by fog or other cause, must display the headlight in front, and two or more red lights in the rear; yard engines must display two green lights instead of red, except when provided with a headlight on both front and rear."

"Rule 23. Conductors, enginemen, flagmen, brakemen, station agents, telegraph operators, switchmen, switch tenders, track foremen, road and

bridge watchmen, and all other employes whose duties may require them to give signals, must provide themselves with the proper appliances, and keep them in good order, and always ready for immediate use."

"Rule 24.   Flags of the proper color must be used by day, and lamps. of the proper color by night, or whenever from fog or other cause the day signals can not be clearly seen.'

"Rule 27.   White signifies safety; and is a signal to go on."

"Rule 78.   All signals must be used strictly in accordance with the rules, and train men and engine men must keep a constant lookout for signals."

The defendant put in evidence, among other rules, the following:

"No. 32.   A flag or lamp swung across the track, a hat or any object. waived violently by any person on the track, signifies danger, and is a. signal to stop."

"No. 59.   A lamp swung across the track is a signal to stop."

"No. 328.   Freight trains and work extras must approach and pass. all stations carefully, with train under full control, expecting to find main track inside of yard limit boards occupied by trains doing work. Irregular trains and regular trains not on time will run carefully and' look out for switch engines inside of yard limit post."

In submitting the case to the jury the court did not in his charge set out for them the acts of negligence pleaded, but instructed them that if the injuries were caused as the proximate result of any or either of the. acts alleged by the plaintiff on the part of the defendant's servants or agents, and that such acts constituted negligence, to find for the plaintiff.   The court should have defined for the jury the issues made by the pleading and the evidence, and not referred them to the petition,. but we do not think any injury resulted to the defendant from the· omission to do so in this case, because the issues were clearly made by the pleadings and the evidence as a violation of the rules of the defendant by its employes in charge of train section 1 in failing to have· out red lights on the rear end of the train and in the failure of the rear· brakeman to go back a telegraph pole and make the proper signal with a lantern, and the jury could not have been misled by the omission. Besides, in several of the instructions requested by the defendant reference was made to the allegations of the petition for the particulars of negligence.   The court also, in his charge to the jury in presenting the· defense, very clearly defined the issues; so no injury could have resulted to defendant, certainly none of which it is in a position to complain. There is no evidence that the plaintiff was misled by the use of a white· light, but, as above stated, the issues of negligence were otherwise clearly defined, and the defendant asked special instructions embodying the error· complained of.

The second assignment of error is based upon the seventh paragraph. of the court's main charge, which instructed the jury that if the plaintiff violated a rule of the defendant and his injuries were the result of such violation, he would not be debarred from recovering on account.

thereof, if the jury should believe under all the circumstances a reasonably prudent person would have done as plaintiff did. As admitted by counsel in their brief, the doctrine of this charge in the abstract is correct according to the decision of the Supreme Court in Railway v. Adams, 94 Texas —, but it is contended that there is no evidence to warrant the finding that a reasonably prudent person would have violated the rules of defendant alleged in its answer. We deem it unnecessary to set out the evidence here, but there was evidence to the effect that the plaintiff had the right of way and a free track to the end of the switch, three-fourths of a mile east of the station; that he left Liberty, twenty-one miles west, at least fory-five minues behind section 1; that it was his purpose to stop for water at the tank west of the station; that his train was under full control; and that there were no signal lights across the track, or upon the caboose of the train. Intending to stop, it was not necessary for him to sound the whistle; he was running carefully, and under his orders it was not necessary for him to be on the lookout for a switch engine inside the yard limit boards as specified in the rule. From what has already been said it will be seen that the third assignment can not be sustained.

The fourth assignment of error complains of the refusal of the court to give the defendant's special charge number 2 which undertook to set out the special acts of negligence for which the defendant would be liable. It is contended that this should have been given because as to some of the acts charged in the petition, there was no evidence. Two acts of negligence were to be submitted to the jury by this instruction, to wit, the failure to flag or signal the approaching train, and the failure to have signal lights displayed on the caboose of the train in front. If the injuries resulted from either of these acts of negligence the defendant would have been liable; yet the court was requested to instruct the jury that unless they should find from the evidence the existence of each and all of the allegations enumerated, they would return a verdict in favor of the defendant. The requested instruction was erroneous, and should not have been given. The instructions requested, as shown by the fifth and sixth assignments of error, were fully covered in the main charge of the court, and it was unnecessary, if it would not have been improper, to repeat the matters embraced therein. We think there was no error in refusing the special instruction copied in the seventh assignment of error. It informs the jury that it appeared from the undisputed evidence that it was customary for trains to stop at Sour Lake for the purpose of taking water, and instructed them that if they believed from the evidence that the plaintiff knew of such custom and ignored or disregarded the same, and in so doing failed to exercise ordinary care and thereby contributed to his own injury, to return a verdict in favor of the defendant. This instruction is upon the weight of the evidence. The allegation of negligence on the part of the plaintiff contained in the answer was that of entering the yard without giving any signals, or controlling or attempt-

ing to control his engine, although he knew or might have known of a custom for trains to stop at the tank to take water. Plaintiff's orders gave him a free track, and the testimony tended to show that no signals were displayed or given by the train in front, and to have given the requested instruction would not have been in response to the pleading, but would have singled out one fact among several upon the issue of negligence or not on the part of plaintiff in approaching the station. There was no error in allowing the plaintiff to testify that he had his train under control, and to explain the meaning of "having the train under control." The rule was necessarily terse and technical, and while it would be fully understood by railroad men operating a train, a jury would not perhaps have a clear idea of what was meant. Plaintiff was shown to be competent to testify as to the meaning of the expression. No injury in any event could have resulted from the admission of the evidence. The proffered testimony of Field and French, engineers running locomotives over defendant's road, as to where they usually shut off steam, applied the air, and slowed up on approaching Sour Lake from the west, was properly excluded. If the defendant desired to show where the plaintiff should have commenced to slow up it would have been proper to do so by showing a number of facts, such as the weight of the engine, the number of cars in the train, the grade, the speed of the train, and other facts. Certainly not by showing where these two witnesses generally commenced.

The tenth assignment of error is addressed to the facts of the case. If the plaintiff's testimony is true, and it is so established by the verdict, the caboose of the stationary train was standing in total darkness on the main track over 1000 feet from the station, at a place where he had no reason to expect it to be. He was keeping a proper lookout consistent with the duties he owed to the operation of the engine, and in absence of the lights and signals which he had the right to expect under the rules, he was not negligent in assuming that the track was clear as shown by his orders. The fact that trains were in the habit of stopping at that station to take water, and that plaintiff knew of such custom, was only one fact out of a number of others bearing upon the question of negligence, and is overborne by the facts that the plaintiff's orders gave him a clear track; that section 1 was nearly an hour ahead of him; that no lights were displayed; and that he had his train under control, and that the caboose which he ran into was over 1000 feet, or about forty-five car lengths, from the water tank. As already stated, we find that the verdict of the jury is fully supported by the evidence, and finding no error for which the judgment should be reversed, it will be affirmed.

*Affirmed.*

Writ of error refused.